USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/13/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X    :
Saida Soria Gutierrez,                                       :
                                                             :     **OPINION**
                          Plaintiff,                         :
                  -against-                                  :     20-CV-10233(KHP)
                                                             :
Commissioner of Social Security,                             :
                                                             :
                          Defendant.                         :    :
------------------------------------------------------------X

**KATHARINE H. PARKER, United States Magistrate Judge**:

        Plaintiff Saida Soria Gutierrez ("Plaintiff"), represented by counsel, commenced this

action against Defendant, Commissioner of the Social Security Administration (the

"Commissioner"), pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff

seeks review of the Commissioner's decision that she was not disabled from November 8, 2017,

the onset date of her alleged disability, through the date of the decision, January 8, 2020.

Plaintiff and Defendant both moved for judgment on the pleadings.

        For the reasons set forth below, the Court DENIES Plaintiff's motion and GRANTS the

Commissioner's motion for judgment on the pleadings.

                                    **BACKGROUND**

        Plaintiff was born in 1970 in Honduras and has two adult children, one of whom she

currently resides with in New York.  (A.R. 42, 472.)  Plaintiff completed the 6th grade and

worked as a home health aide for almost twenty years before the onset of her alleged

disability.  (A.R. 42; 213-15.)  Plaintiff speaks Spanish but is limited in her ability to

communicate in English.  (A.R. 42.)  Plaintiff suffers from diabetes, hypertension, anemia, low

immune system, chest pain, allergies, hives, body weakness, and nausea.  (A.R. 48.)

1. **Procedural History**

On August 1, 2018, Plaintiff filed an application for Title II Disability Insurance Benefits ("DIB") alleging disability due to the physical impairments referenced above.  (A.R. 16.)  Her date last insured is December 31, 2022.  (*Id.*)  Plaintiff's application was denied after initial review on October 5, 2018.  (*Id.*)  At Plaintiff's request, a hearing before Administrative Law Judge ("ALJ") Hilton R. Miller was held on July 31, 2019, in Jersey City, NJ.  (A.R. 40.)  Plaintiff appeared without counsel and requested an adjournment to secure counsel, which ALJ Miller granted.  (A.R. 45.)  On December 15, 2019, a subsequent hearing was held via videoconference where Plaintiff appeared with counsel and testified at the hearing, with the assistance of a Spanish interpreter.  (*Id.*)  Plaintiff's daughter Priltsbie Gutierrez, Vocational Expert ("VE") Whitney Eng, and Impartial Medical Expert ("IME") Dr. Sreedevi Chandrasekhar also testified. (*Id.*)  On January 8, 2020, ALJ Miller denied Plaintiff's application.  (A.R. 10.)  Plaintiff appealed, and on October 8, 2020, the Appeals Council denied Plaintiff's appeal, making the ALJ's decision the Commissioner's final act.  (A.R. 1.)  Of note, Plaintiff submitted additional evidence to the Appeals Council, however it was determined that the additional evidence post-dated the period at issue, thus it was not considered.  (A.R. 2.)

Plaintiff commenced this action on December 4, 2020, asserting that: (1) the ALJ's residual functional capacity ("RFC") determination was not supported by substantial evidence; (2) the ALJ failed to properly evaluate the medical opinion evidence; (3) the ALJ erred in finding that Plaintiff could communicate in English; (4) the ALJ failed to properly consider Plaintiff's absenteeism and time off-task; and (5) the ALJ failed to properly evaluate Plaintiff's subjective statements.  (ECF Nos. 1, 37.)

2.  ***Summary of Relevant Medical Evidence***

Plaintiff had a history of an anemia diagnosis dating to at least 2008 (A.R. 576), and diagnoses of tachycardia and diabetes dating as far back as 2012.  (A.R. 369-70.)  On April 30, 2018, Plaintiff saw Dr. Oyebisi Jegede, whose physical examination of Plaintiff showed unremarkable findings, including that Plaintiff appeared in no acute distress and had intact sensation and full motor strength.  (A.R. 769-71.)  Dr. Jegede assessed that Plaintiff's diabetes was controlled and counseled Plaintiff on diet and exercise.  (*Id.*)

On July 9, 2018, Plaintiff was hospitalized overnight with shortness of breath and chest pain, palpitations, and tachycardia.  (A.R. 853, 1079.)  An electrocardiogram ("ECG") performed in the emergency room showed tachycardic rhythms and supraventricular tachycardia, and a physical exam was "unremarkable except for tachycardia."  (A.R. 323, 855, 864, 1079.)  Upon admission for monitoring, Plaintiff was in sinus rhythm and her symptoms had resolved after receiving IV fluids.  (A.R. 863-64.)  A physical examination showed Plaintiff had normal range of motion and no deformities.  (A.R. 854.)  An echocardiogram was performed, which showed normal left ventricular function and ejection fraction.  (A.R. 864.)  Plaintiff was issued a prescription and advised to follow-up as an outpatient.  (*Id.*)  Of note, Plaintiff reported a similar episode approximately two years prior that resolved with medications; she did not recall being told anything about the cause except that "everything was okay."  (A.R. 863.)

On July 25, 2018, Plaintiff saw physician's assistant (PA) Marisa Leonardo for a regular checkup.  (A.R. 813.)  She reported that she had been feeling fine.  (*Id.*)  She denied having chest pain, shortness of breath, or palpitations either at rest or with exertion.  (*Id.*)  She reported that she could walk a "good number of blocks with out [sic] any problems."  (*Id.*)  She

3

denied headaches, nausea, abdominal pain, leg pain, or any other symptoms.  (*Id.*)  PA

Leonardo noted Plaintiff said she enjoyed walking as an exercise.  (*Id.*)  Plaintiff denied

problems with activities of daily living, including bathing, dressing, eating, transferring, or

walking.  (A.R. 823.)  At a follow-up visit on August 15, 2018, PA Leonardo noted no

musculoskeletal issues or mobility issues.  (A.R. 811.)  On September 10, 2018, Plaintiff was

treated by PA Leonardo for left shoulder pain that she had been experiencing for six months

"intermittently."  (A.R. 326.)  On examination, Plaintiff was in no acute distress and had normal

musculoskeletal and neurological findings.  (*Id.*)  Plaintiff was told to continue taking Tylenol

every four hours.  (A.R. 810.)  On November 10, 2018, PA Leonardo treated Plaintiff for

headaches and pain in her right foot, which both lasted a few days.  (A.R. 801-02.)  In a review

of systems, Plaintiff reported being in a good general state of health, and having no weakness,

no trouble walking, no swelling or deformity, and being able to do her usual activities, but had a

headache.  (A.R. 325, 801.)  Plaintiff returned to PA Leonardo on December 18, 2018 and was

noted to be in similar good health.  (A.R. 794.)

On August 6 to 8, 2018, Plaintiff underwent a FEDCAP evaluation.  Dr. Ernst Ducena

noted that Plaintiff did not read or speak English (A.R. 1244), and that she reported having

difficulty walking and climbing stairs because her feet swelled.  (A.R. 1247.)  Plaintiff was in no

acute distress and had a normal appearance.  A cardiac examination and hematology tests

were abnormal.  (A.R. 1254-55, 1257.)  Plaintiff reported that her barriers to employment were

diabetes, hypertension, and anemia, and she mentioned being hospitalized in 2018 due to

chest pain; she denied other medical or mental health issues.  (A.R. 1245-46.)  Dr. Ducena

opined that Plaintiff's diabetes and hypertension appeared to limit her functional capacity and

she would benefit from accommodations.  (A.R. 1258.)  Nonetheless, in responding to a

questionnaire regarding specific functions, Dr. Ducena identified no specific restrictions,

including with respect to walking.  (A.R. 1256.)

On September 5, 2018, cardiologist Dr. Marian David assessed that Plaintiff's cardiac

testing was normal or negative.  (A.R. 843.)  Dr. David noted that Plaintiff was clinically stable,

with good ventricular function and no evidence of cardiac ischemia.  (*Id.*)

In a September 10, 2018 Function Report completed by Plaintiff's daughter but signed

by Plaintiff, Plaintiff reported that her activities consisted of taking her medications and going

to bed.  Her medications reportedly left her weak and dizzy with no energy.  (A.R. 246.)  She

reported that her impairments affected her sleep and that she had nausea, headaches, and

chest pain that kept her awake.  (A.R. 247.)  She reported she sometimes dressed herself when

she had enough energy to do so; she sometimes was able to bathe herself and shave, but if she

felt weak, her daughter helped feed her.  (*Id.*)  She reported her daughter did her hair.  (*Id.*)

Plaintiff reported she needed assistance to go outside to her doctors' appointments and

reminders to take her medications.  (*Id.*)  She reported that her daughter prepared her meals

because she could not stand for long due to weakness and the steam in the kitchen made her

dizzy.  Plaintiff reported she could hardly lift due to weakness, and she could stand for no more

than six minutes or walk for long before becoming dizzy.  (A.R. 248, 251.)

On September 20, 2018, Plaintiff was evaluated by Consultative Examiner ("CE") Dr.

Dipti Joshi.  She was accompanied by her daughter.  She reported a history of left shoulder pain

that felt "better with medication, worse with lifting," and radiated down her arm.  (A.R. 308.)

On physical examination, Plaintiff appeared in no acute distress and her daily activities included

cleaning once a week and showering and dressing daily.  (A.R. 309.)  She had a normal gait, could walk on her heels and toes without difficulty, had a normal stance, squatted fully, and used no assistive devices.  (*Id.*)  Plaintiff needed no help changing or getting on and off the examination table and was able to rise from a chair without difficulty.  (*Id.*)  Plaintiff had normal musculoskeletal and neurological findings, including a full range of motion in the shoulders and full extremity strength.  (A.R. 310.)  Dr. Joshi diagnosed left shoulder pain, anemia, hypertension, diabetes, intermittent neuropathic symptoms, and a history of tachycardia.  He found Plaintiff's prognosis was stable.  (A.R. 311.)  He opined that she should avoid strenuous activity involving prolonged walking, climbing, standing, heavy lifting, carrying, and pushing and pulling.  (*Id.*)

On October 3, 2018, non-examining physician, Dr. I. Seok, opined that Plaintiff's diabetes and hypertension were severe impairments; that she also had dizziness; and that her symptoms included pain, loss of sensation, and weakness.  (A.R. 50-51.)  He opined Plaintiff could not climb ladders, ropes, or scaffolds, and should avoid concentrated exposure to hazards.  (A.R. 53.)  Dr. Seok assessed that Plaintiff had no exertional limitations.  (A.R. 52.)

On October 13, 2018, Dr. Ravi Venketa, treated Plaintiff for pain in the right upper quadrant that radiated to her back and was associated with nausea.  (A.R. 807-08.)  Plaintiff also said that she had a history of nausea and upper right quadrant pain "after eating fatty meals."  (*Id.*)  In addition, she reported right-hip pain and pain in the left shoulder.  (*Id.*)  On examination, Plaintiff was in no acute distress.  (*Id.*)  She had right upper quadrant tenderness, but normal extremity, musculoskeletal, and neurological findings.  (*Id.*)  Left shoulder and right hip x-rays on October 18, 2018 showed normal findings.  (A.R. 831-35.)  On December 7, 2018,

Dr. Venkata noted that Plaintiff presented with complaints of pain in the right arm and shoulder that increased with movement.  (A.R. 797.)  Plaintiff rated her pain as five out of ten in severity and was prescribed medication.  (*Id.*)  On examination, Plaintiff had right shoulder tenderness but otherwise normal musculoskeletal and neurological findings.  (*Id.*)  A right shoulder x-ray on December 11, 2018 showed unremarkable findings.  (A.R. 829.)  On February 6, 2019, Plaintiff saw Dr. Venkata.  She denied headaches, nausea, chest pain, shortness of breath, or palpitations and stated that she could walk a "good number of blocks" without any discomfort in the chest or legs.  (A.R. 785.)

On January 9, 2019, Plaintiff saw Dr. Joe W. Chamberlin.  He observed that Plaintiff's x-ray findings were benign and advised a follow-up interval of six months.  (A.R. 791.)  Plaintiff was in a good general state of health, able to do usual activities, and was negative for symptoms including shortness of breath, headache, chest pain or discomfort, abdominal pain, nausea, musculoskeletal or joint pain, weakness, or trouble walking.  (*Id.*)  A physical examination showed right shoulder tenderness but otherwise unremarkable findings.  (A.R. 792.)  On May 22, 2019, Dr. Chamberlin reported that a diabetic foot exam showed that Plaintiff had reduced monofilament sensation.  (A.R. 782.)  He also diagnosed chronic kidney disease (stage one), headaches, and pain in the right shoulder.  (*Id.*)  Plaintiff reported being in a good general state of health and having no weakness, no trouble walking, and being able to do her usual activities.  (A.R. 781.)  Plaintiff returned to Dr. Chamberlin on June 12, 2019 and reported the same.  (A.R. 778.)  An exam on that day showed reduced monofilament sensation and was otherwise normal.  (A.R. 779.)

On August 20, 2019, Dr. Chamberlin submitted a Medical Source Statement in which he diagnosed diabetes, anemia, hypertension, chronic kidney disease, and tachycardia.  He stated that Plaintiff's symptoms included weakness and a fast heartbeat.  (A.R. 1259.)  Dr. Chamberlin noted that Plaintiff could not exert herself, was chronically deconditioned, and might experience numbness in her feet.  (*Id.*)  Dr. Chamberlin reported that her medications caused side effects, including low blood sugar and low blood pressure.  (A.R. 1260.)  He opined that Plaintiff had a marked limitation in her ability to deal with work stress.  (*Id.*)  Dr. Chamberlin opined she could sit less than 15 minutes continuously and then had to walk if she was having numbness in her feet; could stand or walk continuously less than 15 minutes and then had to lie down or recline; needed more rest in addition to normally scheduled breaks; and needed to rest in a supine position for four hours in an eight-hour workday to relieve fatigue.  (A.R. 1260-62.)

However, on several of the questions on the form Dr. Chamberlin circled two separate responses and then initialed, dated, and wrote "error" on the line; in those instances, it is not clear which response constituted the "error."  (A.R. 1261.)  For example, for questions asking about Plaintiff's ability to sit and stand/walk in a day, Dr. Chamberlin circled the responses both for "6hrs" and for "< 1 hr."  (*Id.*)  Dr. Chamberlin opined that Plaintiff could stand or walk continuously less than 15 minutes before sitting or lying down.  (*Id.*)  Dr. Chamberlin opined Plaintiff could lift or carry up to five pounds; could never balance, stoop, move her neck, or repetitively reach, handle, or finger; and needed a walker to both walk and stand on all surfaces and terrains.  (A.R. 1262-63.)  Dr. Chamberlin opined that she would be absent from work more than three times a month.  (A.R. 1264.)  The form listed various prompts for positive objective

signs, but apart from commenting that Plaintiff may experience numbness of the feet, Dr.

Chamberlin did not check prompts for any other objective manifestations (i.e., joint instability

or deformity, muscle weakness, range of motion limitations, abnormal gait or posture).  (A.R.

1259.)

Plaintiff returned to Dr. Chamberlin on September 11, 2019.  (A.R. 1655.)  She denied

complaints of headache, nausea, chest pain, shortness of breath, or palpitations, either at rest

or with exertion.  (*Id.*)  She reported that she could walk a good number of blocks without any

problems.  (*Id.*)  In a review of systems, Plaintiff again reported being in a good general state of

health and having no weakness, no muscle or joint pain, no trouble walking, and being able to

do her usual activities.  (*Id.*)  An exam was normal, except that Plaintiff had reduced

monofilament sensation in the feet.  (A.R. 1656.)

On August 29, 2019, Plaintiff was evaluated by Consultative Examiner Dr. Ann Marie

Finegan.  Dr. Finegan submitted three substantially similar reports based on this one

examination: an orthopedic evaluation (A.R. 1266-76), an internal medicine report (A.R. 1278-

1289), and a neurological evaluation.  (A.R. 1292-1302.)  Plaintiff was accompanied by her

daughter and was non-verbal.  (A.R. 1267.)  Plaintiff's daughter reported that Plaintiff stopped

working because she could not keep up with the work schedule and was very tired.  (*Id.*)

Plaintiff's daughter also said she performed her mother's glucose fingersticks for her three to

four times a day.  (A.R. 1279.)  She reported her mother had a dramatic personality change

after a myocardial infarction in August 2018 and had become extremely dependent on her.

(*Id.*)  According to Plaintiff's daughter, Plaintiff did not leave the house alone and complained of

diffuse body pain; she was able to use her walker and followed directions to sit and wait, but

9

steps were sometimes extremely difficult for her.  (A.R. 1266-67.)  Plaintiff's daughter reported

that Plaintiff complained of terrible body pain when attempting to do any household chores, so

she did everything for Plaintiff.  (A.R. 1293.)  Plaintiff's daughter reported Plaintiff was able to

feed herself (A.R. 1266) but needed help showering, bathing, and dressing, and her only activity

was watching TV.  (A.R. 1269.)

Remarkably, Dr. Finegan noted that Plaintiff would not confirm or deny any of her

daughter's statements, even by head movements.  (A.R. 1292.)  She further observed that

Plaintiff sat nonverbal with her eyes closed and would not follow even one-step commands or

cooperate with any part of the examination, even when visually cued.  Despite being able to

follow directions with respect to sitting in the waiting room, waiting for a check on vital signs,

and cooperating with a vision check, Plaintiff suddenly became nonverbal during the

examination.  (A.R. 1293, 1295.)  Plaintiff would only verbalize "oi, oi, oi, oi, oi" when lightly

touched, but did not make similar sounds when her daughter touched her or gently pushed her

to move.  (A.R. 1295.)  Based on just resistance, Dr. Finegan assessed that Plaintiff appeared to

have full strength in the lower extremities and had normal muscle tone and no obvious muscle

atrophy.  (A.R. 1296.)  Passive range of motion appeared to be normal.  (A.R. 1297.)  Plaintiff

also did not need any assistance changing.  (A.R. 1281.)

On examination, Plaintiff appeared in no acute distress.  (A.R. 1295.)  Her gait was

"bizarre," with semi-flexed hips and knees; she walked with her eyes closed, bent forward, and

with very poor posture.  (*Id.*)  She would not walk on heels and toes or demonstrate range of

motion.  (A.R. 1295-96.)  Dr. Finegan noted that Plaintiff had a walker, which the daughter

reported Plaintiff used for fatiguability and total body pain.  (A.R. 1293.)  Dr. Finegan remarked

that Plaintiff's daughter described that she parked about four blocks away and that her mother

was able to use the walker to come to the facility.  (A.R. 1295.)  However, Dr. Finegan notes

that it was "unclear who prescribed" the walker, and in her opinion, the walker was not

medically necessary.

Finally, Dr. Finegan concluded that Plaintiff did not cooperate sufficiently for an

adequate examination and opined that her prognosis was guarded, as she did not seem able to

advocate for herself.  (A.R. 1269-71.)  Dr. Finegan noted she was unable to do a mini mental

status examination, as Plaintiff would not maintain eye contact and would not respond verbally

to any commands, not even to questions asked by her daughter.  (A.R. 1296.)

After ALJ Miller issued his decision finding no disability, Plaintiff submitted additional

material while her appeal was pending before the Appeals Council.  The information included a

request dated August 10, 2020 by Dr. Chamberlin for home care for Plaintiff.  (A.R. 33-35.)  He

noted Plaintiff had type 2 diabetes, difficulty walking, chronic kidney disease, essential

hypertension, and pain, and that all these conditions were chronic.  (A.R. 33.)  He stated that

she needed supervision to take her medications and assistance to self-administer medication.

(*Id.*)  Dr. Chamberlin indicated that Plaintiff needed help with all activities of daily living; he

recommended the provision of services to assist with personal care and light housekeeping.

(A.R. 34-35.)  Plaintiff also provided a receipt from Hudson Medical Supply dated August 17,

2020 indicating the delivery of a walker to her home, but no prescription was provided.  (A.R.

36.)

3. *Administrative Hearing*

At the hearing, Plaintiff testified that she suffered from anxiety and only slept about five hours a night. (S.R. 1689-90.) She also reported having side effects from her medications that made her very hot and perspire and at times caused cramps. (S.R. 1690.) Plaintiff testified that her walker was prescribed by a doctor— "Dr. Joe Chambers."[1] (S.R. 1691.) However, when asked by the ALJ, Plaintiff's counsel was unable to identify a medical record containing such a prescription. (*Id.*) Plaintiff testified that her daughter helped her buy it. (S.R. 1692.) Plaintiff further testified that she stopped working because she was falling asleep on the job because of her medication and was told to leave; she had pain and could not do what was needed on the job. (S.R. 1690-91.) She testified that she missed work about twice a week. (S.R. 1694-95.)

Plaintiff's daughter testified that at her mother's evaluation by Dr. Finegan, the doctor stated that her mother seemed to be in a lot of pain and it would be best for them to leave and that Dr. Finegan didn't "want to put her through a lot of stress and pain and just told us to go." (S.R. 1687.) Plaintiff's daughter also testified that her mother couldn't stand for long and was tired and weak, noting "[t]here's barely movement." (*Id.*) Plaintiff's daughter drove and accompanied her mother to all her appointments. (*Id.*) She also testified that her mother was never left alone because she could not really do anything on her own; and that her mother did not do any chores or grocery shopping. (S.R. 1687-88.) Plaintiff's daughter testified that her mother had trouble sleeping and suffered from anxiety and that she was trying to get her

---

[1] From the record, it appears Plaintiff is referring to Dr. Joe W. Chamberlin.

mother treatment for anxiety.  (S.R. 1688, 1693.)  On additional discussion, however, counsel agreed that there was no medical record in the file of a mental health diagnosis.  (S.R. 1694.)

Dr. Chandrasekhar reviewed the medical record and testified by telephone at the hearing.  (S.R. 1675.)  Dr. Chandrasekhar is board certified in pediatrics and family practice. Plaintiff stipulated to Dr. Chandrasekhar as an expert in internal medicine.  (S.R. 1676.)  Dr. Chandrasekhar testified that there was a "gap of records from 2018 to 2019."  (S.R. 1678.) She testified there were no neurologic findings in the record for Plaintiff's shoulder pain, but that her diabetes was severe, and she would have to check her glucose regularly.  (S.R. 1680-81.)  She testified that Plaintiff had hypoglycemia in 2018, but after that "we don't have anything."  (A.R. 1684.)  Dr. Chandrasekhar did not see an objective reason for Plaintiff to need a walker, nor did she see any functional limitations; in her opinion, Plaintiff should be able to lift 50 pounds occasionally, as there was no indication that she could not lift that much.  (S.R. 1682-83.)

Next, the ALJ presented the VE with a hypothetical RFC of medium work; occasionally climbing ramps and stairs; no ladders, ropes, or scaffolds; frequently balancing, kneeling, crouching and stooping; no crawling; no foot controls or pedals; no hazards such as dangerous machinery, motor vehicles, unprotected heights, or vibrations; performing only simple, routine, and repetitive tasks involving simple decisions, only occasional changes in routine, only occasional contact with others, and only very little or basic communication in English. (S.R. 1696-99.)  The VE testified that an individual with those limitations would be able to perform the jobs of kitchen helper, cook helper, or hospital cleaner.  (*Id.*)  Having to use a walker and not being able to stoop or reach would preclude the medium-level jobs the VE

identified.  (S.R. 1701-02.)  The VE testified that being absent more than once a month would preclude employment and that all the jobs would have a one-month probationary period during which only one absence would be tolerated.  (*Id.*)  Off-task behavior over 10 percent of a workday would preclude all work.  (*Id.*)

### 4. *The Commissioner's Decision*

ALJ Miller found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date and had the following severe impairments: chronic kidney disease, stage one; type two diabetes; hyperlipidemia; anemia; history of myocardial infarction; and hypertension.  (A.R. 18.)  ALJ Miller noted that while Plaintiff testified she experienced anxiety, she was never diagnosed nor received medical treatment for the condition, thus the anxiety was not medically determinable.  (A.R. 18-19.)  ALJ Miller also found that Plaintiff complained of significant musculoskeletal pain, particularly in her shoulders and hips, however these were also non-medically determinable impairments because radiographic imaging revealed no abnormalities.  (A.R. 19.)  Thus, the ALJ found that Plaintiff's impairments did not meet or equal the severity of any impairment in the applicable Listings while noting he also reviewed Plaintiff's impairments under the applicable regulation pertaining to obesity.

In addressing Plaintiff's subjective complaints, ALJ Miller noted that her statements regarding the intensity, persistence, and limiting effects of her symptoms and the medical record supported significant work-related limitations, however not to the degree alleged.  (A.R. 20-21.)  ALJ Miller found that diagnostic testing, objective examination results, and recommended treatment indicated greater functional ability.  (*Id.*)

As to the opinion evidence, the ALJ found that the opinion of Dr. Chandrasekhar was partially persuasive because some of the answers she provided were "somewhat vague" and she did not personally examine Plaintiff.  (A.R. 22.)  The ALJ found that the opinion of CE Dr. Joshi was not persuasive because he did not define words such as strenuous or prolonged, which rendered his decision vague and not supported or consistent with the overall record. (*Id.*)  The ALJ found that the opinion of the Defendant's reviewing physician, Dr. Seok was not persuasive as he did not have the benefit of a complete record when rendering his opinion. (*Id.*)  The ALJ found the opinion of treating physician Dr. Chamberlin was not persuasive as it was not supported by the treatment records and not consistent with the overall record.  (*Id.*)

The ALJ found that Plaintiff had the RFC for medium work except that she could occasionally climb ramps and stairs but never ladders, ropes, or scaffolds; could frequently balance, kneel, crouch, and stoop; could not crawl or perform work requiring manipulation of the bilateral lower extremities, such as operating foot controls or pedals, or work involving hazards such as dangerous machinery, operation of motor vehicles, unprotected heights, or vibrations.  (A.R. 19.)  ALJ Miller noted that Plaintiff had a limited education and is able to communicate in English.  (A.R. 23.)  The ALJ found that, based on the VE's testimony, there were jobs that Plaintiff could perform, including: kitchen helper, cook helper, and hospital cleaner.  Accordingly, the ALJ found Plaintiff was not disabled.  (A.R. 24.)

## LEGAL STANDARD

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir.

2013) (*per curiam*) (citing *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"); *id*. § 1383(c)(3) ("The final determination of the Commissioner of Social Security . . . shall be subject to judicial review as provided in section 405(g)[.]").

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (*per curiam*) (citation and internal quotation marks omitted).

<u>**DISCUSSION**</u>

### a.  Development of the Record

An ALJ is required to make every reasonable effort to obtain from the individual's treating doctors or other providers all medical evidence, including diagnostic tests, needed to properly make a determination.  42 U.S.C. § 423(d)(5)(B).  It is the ALJ's duty to investigate the facts and develop arguments both for and against granting benefits.  *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).  Before evaluating whether the Commissioner's decision is supported by substantial evidence, the court must be satisfied that the ALJ fully developed the record and provided the plaintiff with a full hearing.  *Intonato v. Colvin*, 2014 WL 3893288, at *8 (S.D.N.Y. Aug. 7, 2014) (*quoting Scott v. Astrue,* 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010)).

16

In this case, after a careful review, the Court finds ALJ Miller's development of the record thorough and complete as he provided a robust hearing and ordered an additional consultative examination of Plaintiff.  In addition, there are no obvious gaps in the administrative record, as the ALJ obtained and considered reports from treating providers and had a complete medical history for the relevant period that was adequate to make a determination.  *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

Plaintiff points to certain aspects of the records to argue that the ALJ did not develop the record including that there are no medical records for the period October 2019 through August 2020, only a few treatment notes for 2019 despite Plaintiff's daughter's testimony that Plaintiff had three to four medical appointments every month and Dr. Chandrasekhar's statement that there was a "gap" of records from 2018 to 2019 and no neurologic findings for Plaintiff's shoulder pain.[2]  To start, the ALJ cannot be faulted for failing to obtain records after the date of his January 2020 decision.  With regard to supposedly missing treatment notes in the earlier period, Plaintiff, her daughter, nor counsel identified any missing records at the administrative hearing.  Rather, the ALJ confirmed the submitted evidence and confirmed that Plaintiff did not have any objections.  (S.R. 1673).  ALJ Miller questioned Plaintiff at the initial hearing about where she received medical treatment and obtained those records, and Plaintiff's counsel did not note any missing records.  *See Byrd v. Kijakazi*, 2021 WL 5828021, at *23 (S.D.N.Y. Nov. 12, 2021), *report and recommendation adopted sub nom.*, *Byrd v. Kijakazi, Acting Comm'r of Soc. Sec.*, 2021 WL 5827636 (S.D.N.Y. Dec. 7, 2021) (finding no failure to

---

[2] As further discussed below, the ALJ discounted Dr. Chamberlin's opinion.  Accordingly, the ALJ not seeking clarification for the confusing medical opinion was not a failure to develop the record.  *See Collier v. Berryhill*, 2020 WL 3638515, at *7 (S.D.N.Y. July 6, 2020).

develop the record where counsel did not object at the administrative hearing).  Furthermore, in her brief Plaintiff does not identify any providers whose records were not obtained.  *See Collier*, 2020 WL 3638515, at *7 (rejecting argument that ALJ failed to develop the record where claimant had "not identified any gaps or ambiguities in the record that would suggest her medical history was incomplete").  Assuming *arguendo* that Plaintiff's medical records were in fact incomplete, Plaintiff's submission to the Appeals Council included only a receipt for a walker and a request by Dr. Chamberlin for a home health aide and no additional treatment record, which further suggests that the record was complete.  *See Graber v. Comm'r of Soc. Sec.*, 2020 WL 3989345, at *5 (W.D.N.Y. July 15, 2020) (finding no failure to develop the record where the Plaintiff did not introduce or attempt to introduce any additional health records to the Appeals Council).  Additionally, the Court has carefully reviewed the record, including the information submitted on appeal, and finds no obvious gaps that required the ALJ to seek additional information.  *See Rosa*, 168 F.3d at 79; *Starr v. Comm'r of Soc. Sec.*, 2022 WL 220408, at *5 (S.D.N.Y. Jan. 26, 2022).  As for Dr. Chandresekhar's testimony, the Court reads it merely as making observations, not that records existed that were not obtained and included in the record.

As to Plaintiff's argument that the ALJ failed to consider Plaintiff's mental impairments, namely anxiety, it is without merit.  At the hearing, Plaintiff's daughter testified that Plaintiff suffered from anxiety, and that she was attempting to locate treatment for Plaintiff.  (A.R. 1693.)  However, ALJ Miller questioned counsel as to whether there was support in the record for a diagnosis of anxiety, and counsel conceded there was not.  (A.R. 1694.)  Accordingly, ALJ Miller correctly found Plaintiff's impairment to be medically non-determinable.  Thus, he was

18

not required to order a consultative examination.  *See* SSR 96-4p, 1996 WL 374187 ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment."); *Mitchell v. Berryhill*, 2018 WL 3300683, at *15 (S.D.N.Y. Feb. 2, 2018), *report and recommendation adopted sub nom.*, *Mitchell v. Colvin*, 2018 WL 1568972 (S.D.N.Y. Mar. 30, 2018).

The Court notes that Plaintiff submitted additional evidence to the Appeals Council including a receipt for the walker in August 2020 and an August 10, 2020 request by Dr. Chamberlin for home care.  The Appeals Council found that this evidence was not "new" evidence because it did not relate to the period for which benefits were denied.  Although this evidence is part of the record reviewed by this Court, considering the entire record, the Court finds there is no reasonable probability that the additional evidence would have changed ALJ Miller's decision because, as discussed below, the documents do not readily support that Plaintiff is in fact disabled.  *Keila R. v. Comm'r of Soc. Sec.*, 2022 WL 1420777, at *4 (W.D.N.Y. May 5, 2022) (finding additional evidence was not relevant because it does not pertain to Plaintiff's condition during the time period for which benefits were sought); *Rosario v. Comm'r of Soc. Sec.*, 2022 WL 992889, at *16 (S.D.N.Y. Apr. 1, 2022) (finding the additional evidence would not have changed the outcome of the ALJ's decision because the additional treatment records did not support a finding of disability).

**b.  Whether the RFC Was Supported by Substantial Evidence**

Plaintiff argues that the ALJ failed to properly accommodate Plaintiff's need for an

assistive device, the impact of the side effects of her medications, and her ability to

communicate in English.  "An RFC finding is administrative in nature, not medical, and its

determination is within the province of the ALJ[.]"  *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x

46, 48 n.3 (2d Cir. 2021) (citing 20 C.F.R. § 404.1527(d)(2)).  The ALJ, as the fact-finder, is

"entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with

the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  Ultimately, it is the

claimant's burden to demonstrate the limitations in the RFC.  *See Smith v. Berryhill*, 740 F.

App'x 721, 726 (2d Cir. 2018) (citing 42 U.S.C. § 423(d)(5)).  Here, the ALJ addressed each of the

issues identified by Plaintiff.

As to Plaintiff's need for an assistive device, there is ample support in the record that it

was not medically necessary.  Both Drs. Finegan and Chandrasekhar opined that Plaintiff did

not need a walker.  (A.R. 1295, S.R. 1682-83.)  At the hearing, ALJ Miller questioned Plaintiff and

her counsel as to who and when the assistive device was prescribed as there was no record of it

in the materials obtained and provided by her physicians, although Dr. Chamberlin opined that

she needed a walker.  (A.R. 1691-92.)  Plaintiff testified that Dr. Chamberlin prescribed it,

however, Plaintiff's counsel conceded there was no prescription for an ambulatory assistive

device in the record.  (*Id.*)  As to the additional receipt provided to the Appeals Council, it only

shows that a walker was delivered to Plaintiff on August 17, 2020 and does not indicate

whether it was prescribed by any physician.  (A.R. 36.)  Furthermore, a review of Dr.

Chamberlin's treatment notes does not reveal that Plaintiff had significant mobility issues but

rather that Plaintiff informed Dr. Chamberlin that she can walk several blocks without issue.

(A.R. 778, 781, 1655).  His records included benign x-ray findings (A.R. 791), and his only

treatment was to continue Plaintiff on her medication and advise her to exercise.  (A.R. 778-84,

792.)  In a similar case, *Michelle B. v. Comm'r of Soc. Sec.*, the court found the ALJ did not err

where the record did not contain specific medical documentation establishing the Plaintiff

required an assistive device, an examining physician opined the cane was unnecessary, and

there were numerous instances where Plaintiff presented mostly normal on examination.  2022

WL 130898, at *4 (W.D.N.Y. Jan. 14, 2022); s*ee also Puente v. Comm'r of Soc. Sec.*, 130 F. Supp.

3d 881, 895 (S.D.N.Y. 2015) (finding substantial evidence supported ALJ's determination that

claimant's use of a cane was not medically necessary in light of the record and a physician also

opining it was not necessary).

　　As to the side effects of her medications, Plaintiff mostly complained of dizziness, which

ALJ Miller accounted for in fashioning an appropriate RFC.  Under the applicable regulations,

SSR 16-3p specifically requires that an ALJ consider the "type, dosage, effectiveness, and side

effects of any medication the individual takes or has taken."  Of note, the conditions and

medications causing Plaintiff's side effects were prescribed before the onset of her alleged

disability.  (*See* A.R. 284, 369-70, 383-87, 405-408, 491, 497-531, 576.)  The ALJ recognized that

the medical evidence as of the alleged onset date showed no issues associated with these

conditions and only conservative treatment (i.e., medication) for these issues during the

relevant period.  (A.R. 20-21; 1655-58.)  There is no indication in the record that the conditions

for which Plaintiff was prescribed medication deteriorated over time or that her side effects

increased over time.  As the Second Circuit has recognized, a condition that did not deteriorate

from when a claimant worked cannot be disabling under the Act.  *See Snell v. Apfel*, 177 F.3d

128, 136 (2d Cir. 1999).  Nonetheless, to account for Plaintiff's dizziness, ALJ Miller excluded

work that involved "hazards such as dangerous machinery, operation of motor vehicles,

unprotected heights, or vibrations."  (A.R. 19.)  As to Plaintiff's ability to communicate in

English, ALJ Miller questioned Plaintiff about this at the hearing through an interpreter, and

Plaintiff testified that she could communicate in basic English.  (A.R. 42; S.R. 1698-99.)  ALJ

Miller then asked and confirmed with the VE that the jobs identified (i.e., kitchen helper, cook

helper, or hospital cleaner) did not require much English.  Thus, the Court finds no error.

Relatedly, Plaintiff also asserts that the ALJ erred in finding that Plaintiff can engage in

medium work which includes lifting up to 50 pounds and frequently lifting up to 25 pounds

because no evidence supports that she has these physical capabilities.  *See* 20 C.F.R. §

404.1567.  However, there is support in the record.  ALJ Miller relied on Dr. Chandrasekhar,

who opined that Plaintiff could engage in medium work and lift up to 50 pounds.  (S.R. 1682-

83.)  Plaintiff's ability to engage in medium work is further supported by CE Dr. Joshi's

observation that Plaintiff had a full range of motion in all major joints and her spine and that

her motor strength was normal in upper and lower extremities.  (A.R. 309-310.)  Similarly,

although CE Dr. Finegan noted that Plaintiff was uncooperative in the examination and made

sounds indicative of pain when Dr. Finegan touched her, Plaintiff made no such sounds when

her daughter touched her.  Dr. Finegan also noted no evidence of muscle atrophy, suggesting

that Plaintiff was using her muscles, not barely doing any activities as she and her daughter

testified.  (A.R. 21, 1296.)  *See Tammy C.-J. v. Comm'r of Soc. Sec.*, 2021 WL 773414 (W.D.N.Y.

Feb. 26, 2021) ("[I]t is well-settled that an ALJ may rely on the opinion of a consultative examiner in assessing the RFC.").

Plaintiff also asserts that her tachycardia impacts her ability to engage in medium work. However, while Plaintiff had an incident when she suffered from tachycardia, they were rare, and only once required one night of observation in the hospital and on that occasion was alleviated by IV fluids.  Thus, this condition and the one hospitalization does not support any functional limitations.  (*See* A.R. 20, 843, 863-64.)

Plaintiff urges that it was error to accept Dr. Chandrasekhar's opinion over that of her treating doctors.  But, as further discussed below, ALJ Miller explained that Drs. Chamberlin and Joshi's opinions on her limitations were unpersuasive.  As such, it was proper for him to discount the unsupported portions of their opinions about lifting capabilities, absenteeism, and time off-task in formulating Plaintiff's RFC.  Accordingly, the Court finds that ALJ Miller's RFC determination is supported by substantial evidence.  *See Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021) (upholding the ALJ's finding that the claimant had greater restrictions than indicated by a doctor, in the context that the ALJ had to reach an RFC finding based on the record as a whole).

Plaintiff also takes issue that Dr. Chandrasekhar specialized in pediatrics and adolescent medicine.  This argument fails for two reasons.  First, Dr. Chandrasekhar testified she is board certified in family medicine, which includes adult medicine.  (A.R. 1676).  Second, Plaintiff's counsel stipulated that Dr. Chandrasekhar was a proper expert in internal medicine at the hearing.  And, assuming *arguendo* Dr. Chandrasekhar was not a proper expert witness, Plaintiff

should have raised any objections as to her qualifications before the ALJ.  *See Johnson v. Saul*, 2020 WL 6562402, at *9 (D. Conn. Nov. 9, 2020).

### c.   Whether the ALJ Properly Weighed the Medical Opinion Evidence

When evaluating medical opinion evidence to arrive at an RFC, the ALJ must consider several factors including supportability and consistency.  *See Herrera v. Comm'r of Soc. Sec.*, 2021 WL 4909955, at *6 (S.D.N.Y. Oct. 21, 2021) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). In weighing medical evidence, the ALJ may choose portions of an opinion he finds persuasive and reject those that are not.  *See Christina v. Colvin,* 594 F. App'x 32, 33 (2d Cir. 2015); *Trepanier v. Comm'r of Soc. Sec.*, 752 F. App'x 75, 79 (2d Cir. 2018).  Importantly, the ALJ must explain why a particular opinion is not supported or consistent with the record when discounting it.  *Brenda Lee B. v. Comm'r of Soc. Sec.*, 2022 WL 1421821, at *3 (N.D.N.Y. May 4, 2022) (citation omitted).

Here, ALJ Miller found Dr. Chamberlin's opinion not persuasive.  ALJ Miller explained that Dr. Chamberlin's own longitudinal treatment notes did not support the conclusion that Plaintiff had ambulatory issues because Plaintiff stated she could walk several blocks, his treatment of Plaintiff was conservative, and he did not actually prescribe Plaintiff's walker. (A.R. 22.)  The ALJ explained that his notes indicated normal physical functioning and conservative medication such as Tylenol and naproxen for pain.  (*Id.*)  Further, the ALJ explained that the limitations cited by Dr. Chamberlin are not consistent with the overall record, noting Dr. Joshi's notes showing normal gait, sensory functioning, and motor strength.  (*Id.*)  The Court also notes that x-rays of Plaintiff's hips and shoulders were unremarkable and noted no issues, Plaintiff often had a full range of motion, musculoskeletal examinations were normal, and

24

treating physicians including PA Leonardo, Drs. Venketa, Ducena, Joshi, and Finegan do not

note as extensive limitations as those described by Dr. Chamberlin.  (A.R. 22, 309-10, 785, 831-

35, 1256,1295-97.)  As to CE Dr. Joshi, ALJ Miller explained that Dr. Joshi's opinion was not

persuasive because he did not define words such as strenuous or prolonged, which rendered

his decision vague, and he did not support his suggested limitations with evidence.  (A.R. 22.)

The ALJ noted in his opinion that Dr. Joshi observed Plaintiff walking, including toe and heel

walk, without difficulties, noted that she could squat and change positions without difficulty

and had a full range of motion in all major joints and her spine and that there was no evidence

of sensory deficits or lower than normal motor strength.[3] (A.R. 21, 309-10.)

Accordingly, given the overall record, the ALJ's weighing of the medical opinion

evidence is supported by substantial evidence and in accordance with applicable regulations.

*See Tami Ann A. v. Comm'r of Soc. Sec.*, 2022 WL 938167, at *3, 5 (S.D.N.Y. Feb. 3, 2022), *report*

*and recommendation adopted sub nom*, *Albanese v. Comm'r of Soc. Sec* 2022 WL 929837

(S.D.N.Y. Mar. 29, 2022) (finding that the ALJ reasonably concluded the physician's assessment

to be inconsistent with other medical opinion and evidence and "[c]onsistency is the extent to

which an opinion or finding is consistent with evidence from other medical sources and non-

medical sources.") (internal quotation and citation omitted); *Herrera*, 2021 WL 4909955, at

---

[3] Although ALJ Miller was required to discuss the supportability and consistency of Dr. Joshi's medical opinion pursuant to § 404.1520c, his failure to do so was harmless because it is clear from the record his discussion would lead to the same conclusion. *See Coleman v. Kijakazii*, 2022 WL 766127, at *8 (D. Conn. Mar. 14, 2022); *see generally Schillo v. Kijakazi*, 31 F.4th 64, 79 (2d Cir. 2022) (holding although the ALJ failed to proceed methodically through the enumerated factors, the ALJ articulated good reason to providing little weight to the medical opinion rendering the error harmless).

*10-11 (finding that the ALJ decision to find certain providers' assessments unpersuasive was supported by substantial evidence).

Thus, after finding Drs. Chamberlin's opinion unpersuasive, ALJ Miller's decision not to give credence to his conclusions about Plaintiff's limitations – such as monthly absences, need for a walker, and certain postural limitations – was supported by substantial evidence. *Smith*, 740 F. App'x at 726-27; *Figueroa v. Comm'r of Soc. Sec.*, 2022 WL 1448626, at *11 (S.D.N.Y. May 9, 2022); *Suarez v. Comm'r of Soc. Sec.*, 102 F. Supp. 3d 552, 582 (S.D.N.Y. 2015) (decision of ALJ to reject additional limitations assessed by two treating physicians was supported by substantial evidence). Finally, to the extent Plaintiff must check her glucose levels three-to-four times a day, it is unlikely that it would yield significant time off-task to preclude all work. *See e.g., Miller v. Colvin*, 2015 WL 1431699, at *13, 15 (W.D.N.Y. Mar. 27, 2015) (noting that a "requirement that Miller be permitted a break every three hours in order to monitor and manage her blood glucose levels" would not preclude competitive employment including working as an industrial cleaner).

As to Dr. Chandrasekhar, the ALJ found her to be partially persuasive insofar as she had the benefit of the entire record, her opinion was supported and consistent with the overall evidence but provided somewhat vague answers when testifying and did not personally examine Plaintiff. Notably, an ALJ is not required to take the opinion of an opining physician wholesale and can rely on parts of it, as long as the RFC is supported by substantial evidence. *See Schillo*, 31 F.4th at 78. Additionally, although Dr. Chandrasekhar testified as an IME without the benefit of examining Plaintiff, the ALJ did not err in relying on her testimony, as an ALJ may rely on such doctors' opinions. *See Linda L. v. Comm'r of Soc. Sec.*, 2021 WL 2269504, at *3

(W.D.N.Y. June 3, 2021); *James M. v. Comm'r of Soc. Sec.*, 2020 WL 7121462, at *7 (W.D.N.Y.

Dec. 4, 2020).

And as to Dr. Seok, the ALJ found his opinion that Plaintiff could work at all exertional

levels unpersuasive because, although it was supported with a discussion of the relevant

evidence through October 2018, he only had Plaintiff's treatment records through October

2018 and did not have a later record, which showed abnormal monofilament testing or

Plaintiff's testimony.  (A.R. 22.)

At bottom, ALJ Miller was entitled to weigh all of the evidence as a whole in making his

determination so long as it was consistent with the record as a whole, which is clearly evident.

*See Matta*, 508 F. App'x at 53.

### d.  Whether the ALJ Properly Evaluated Plaintiff's Subjective Statements

Plaintiff complains that the ALJ erred in finding that Plaintiff's own statements about the

intensity, persistence and limiting effects of her symptoms were exaggerated.  An ALJ "is not

required to accept the claimant's subjective complaints without question; he may exercise

discretion in weighing the credibility of the claimant's testimony in light of the other evidence

in the record."  *Genier*, 606 F.3d at 49.  Further, subjective statements alone are not enough to

support a finding of disability.  *DeJesus v. Comm'r of Soc. Sec.*, 2021 WL 5829766, at *12

(S.D.N.Y. Dec. 8, 2021) (citation omitted).  However, the ALJ must provide specific reasons for

rejecting the Plaintiff's account of the severity of her symptoms considering objective evidence,

frequency and intensity of symptoms and other treatment.  20 C.F.R. §§ 404.1529(c),

416.929(c).

27

Here, Plaintiff testified about her chronic pain and weakness, difficulty sleeping, cramps, and need for a walker.  (A.R. 20, S.R. 1690-92.)  The ALJ explained that in considering the entire record, the intensity, persistence, and limiting effects of Plaintiff's symptoms were not to the degree alleged, noting that diagnostic testing, objective examination results and recommended treatment regimen all indicated a greater ability to function than Plaintiff described at the hearing.  (*Id.*).  These reasons are supported by record.  For example, Plaintiff's pain in her arm, shoulder and hips were not corroborated by objective medical findings insofar as x-rays in 2018 and 2019 were unremarkable, Plaintiff received conservative treatment, her diabetes was well controlled, and the tachycardia reported in July 2018 resolved with medication.  (A.R. 770, 829-35, 863-64.)  Additionally, the fact that Dr. Chamberlin requested Plaintiff receive home care does not change the analysis because, as discussed above, the request is not supported by objective medical findings or treatment.  Rather, the record includes examinations showing normal ranges of motion, unremarkable x-rays, and Plaintiff's own statements that she had no trouble walking.  (A.R. 781, 791.)  Accordingly, the Court finds ALJ Miller properly evaluated Plaintiff's subjective statements.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is DENIED, and Defendant's motion for judgment on the pleadings is GRANTED.

28

**SO ORDERED.**

Dated: June 13, 2022
      New York, New York

KATHARINE H. PARKER
United States Magistrate Judge